CHICAGO AND ALTON RAILROAD COMPANY

v.

RUSSELL B. THRAPP.

1. COMMON CARRIER—DUTY TO DELIVER FREIGHT IN TIME.—A common carrier cannot escape liability for loss occasioned by delay in transportation of goods by showing the delay to have been caused by the ordinary accidents of railroad traffic. If the carrier has made an express contract to deliver by a specific time, unavoidable accident will not excuse him, and in the absence of an express contract, he is bound to deliver in a reasonable time, according to the usual course of business, with all reasonable dispatch.

2. KNOWLEDGE OF TIME FOR DELIVERY.—Where a carrier receives goods with full knowledge that they are expected to be delivered by a certain time, he assumes the liability of delivering them in time or showing that he used every reasonable effort to make the delivery.

APPEAL from the Circuit Court of Menard county; the Hon. LYMAN LACEY, Judge, presiding. Opinion filed January 13, 1880.

Messrs. DEARBORN & CAMPBELL and Mr. N. W. BRANSON, for appellant; that the measure of damages for a failure to deliver is the difference between the fair market value of the goods and what would have been their value if not injured by the delay, cited 12 Redfield on Railways, 184; Shaw v. So. Car. Ry. Co., 5 Rich. 462; Mich. Ry. Co. v. Bivens, 13 Ind.

263; Bowman v. Teall, 23 Wend. 306; G. & C. U. R. R. Co. v. Rae, 18 Ill. 488; Priestly v. N. I. & C. R. R. Co., 26 Ill. 205; Lewis v. Ship Success, 18 La. An. 1; Ingledew v. Northern R. R. Co., 7 Gray, 86; Black v. Camden, etc., R. R. Co. 45 Barb. 40; McGregor v. Kilgore, 6 Ohio, 358; C. B. & Q. R. R. Co. v. Hale, 2 Bradwell, 150; Sangamon & Morgan R. R. Co. v. Henry, 14 Ill. 156.

Delay in the delivery of goods is no ground for a refusal by the owner or consignee to accept them, and acceptance is no waiver of claims for damages: Field on Damages, 332; Bowman v. Teal, 23 Wend. 306; Story on Bailments, § 582; Hackett v. B. C. & M. R. R. Co. 35 N. H. 390; Home Ins. Co. v. Western Trans. Co. 51 N. Y. 93; Howe v. Oswego, etc., R. R. Co. 56 Barb. 121; Scovil v. Griffith, 12 N. Y. 509; Briggs v. N. Y. C. R. R. Co. 28 Barb. 515.

If the goods are not wholly lost the owner may recover damages proportionate to the injury sustained: Edwards on Bailments, 570; Brackett v. McNair, 14 Johns. 170; Wallace v. Vigus, 4 Blackf. 260; McGregor v. Kilgore, 6 Ohio, 143.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for appellee; as to the rule of damages, cited Sedgwick on Damages, 414; C. & N. W. R. R. Co. v. Shultz, 55 Ill. 421; Angell on Carriers, § 484.

DAVIS, P. J.  Appellee sued appellant, in an action on the case, to recover damages for delay in delivering nursery stock, shipped from Tallula in Menard county, to Jerseyville, in Jersey county.  The stock was packed in eight large boxes, and shipped on the fifteenth of April, 1875.  On the Saturday before the shipment, appellee applied to the agent of the company at Tallula, and informed him of the shipment he had to make of goods he had sold, and that he had notified the purchasers that the goods would be delivered at Jerseyville on the sixteenth, and that he wanted them to get there on that day, and asked the agent when they should be shipped to reach there at that time.  The agent told him that there were trains running through Tallula to Jerseyville, and that goods shipped on

those trains would reach Jerseyville between five and eight o'clock of the same day, and there could be no delay. The goods were put on the train designated, between ten and eleven o'clock, on the morning of the fifteenth, and were sent out in due time, and reached Roodhouse, the station where the car containing them was to be transferred to another train going south to Jerseyville between five and six o'clock of the same evening. At Roodhouse, in switching off and making up the train, the draw head, or the piece of iron that runs under, and is fastened to the bottom of the car, into which the coupling link goes, of the car containing the goods shipped was broken, and the car was put on the repair track, to be repaired. It was in such a condition that it could not be safely attached to a train, and sent on until repaired, and it was not repaired until the next morning, between nine and ten o'clock. By reason of this accident the goods did not reach Jerseyville until about ten o'clock at night, of the sixteenth. Appellant claims exemption from liability, on the ground that the delay was caused by an accident, so serious as to render it unsafe to proceed with the car until it could be repaired, and of such a nature that appellant was not responsible for the effect of the delay. A common carrier is regarded in the light of an insurer, and is answerable for every loss which cannot be attributed to the act of God, or a public enemy. The C. & N. W. R. R. Co. v. Sawyer, 69 Ill. 285.

A carrier cannot escape liability for loss caused by delay in transporting goods, by showing the delay to have been caused by the ordinary accidents of railroad traffic. If the carrier has made an express agreement to deliver goods by a specified time, delay caused by unavoidable accident will not excuse him, and in the absence of a special contract, the carrier is bound to deliver the goods at their destination in a reasonable time, according to the usual course of his business with all convenient dispatch. 2 Redfield on the Law of Railways, § 189.

The evidence in this case is somewhat conflicting as to whether there was an express contract for the delivery of the stock within a specified time, but taking the testimony of the agent of appellant as to what passed between him and appel-

lee when the arrangement was made for the shipment of the nursery stock, and it appears that appellant had full knowledge that the goods were to be delivered by appellee to his customers on the sixteenth, and that he wanted them to be there in time to make the delivery on that day.

In receiving the goods with this knowledge of the obligation resting upon appellee, and of his expectation that the goods would be delivered on that day, appellant assumed the liability of delivering them in time, or in case of failure of showing that it used every reasonable effort to make the delivery. Appellant failed in both of these particulars. The goods did not reach their destination until the night of the sixteenth, too late for delivery by appellee on that day, and no effort whatever was made by appellant to forward them in time to discharge its obligation. The goods reached Roodhouse between five and six o'clock, on the evening of the fifteenth, and the draw-head was broken, and the car in which the goods were shipped was put on the repair track shortly before six o'clock. The train to which the car should have been attached, left at 6.30, and the next train by which the goods could have been sent, left at four o'clock next morning, and by the usual running time, would have reached Jerseyville at six or seven o'clock in the morning of April sixteenth. The car was repaired in two and a half hours. The only excuse given by appellant for the delay was that the injury to the car happened shortly before the employees of the company were discharged from work for the day, and to have transferred the goods to another car, or repaired the injured car would have required the men to work two or three hours after regular work hours. This excuse cannot avail.

The remaining question is whether the amount of damages allowed can be sustained by the evidence. The jury by their verdict, gave appellee $536.82, for which amount judgment was rendered. The value of the nursery stock shipped was $1850.17. Of this amount, about $1600.00 had been sold before shipment, and the balance was sent subject to approval of parties. If, by reason of the failure to receive the goods on the sixteenth of April, the purchasers from appellee refused to re-

ceive them, and by the terms of their contract they had the right so to refuse, and appellee was compelled to sell them at a less price, he would be entitled to recover the difference between the contract price and the price received as to those sold before the shipment. And as to those shipped subject to approval, appellee would be entitled to recover the difference, if any, between the market price at the time they should have been delivered and the market price at the time they were delivered, at the place of delivery. And as to both classes of goods appellee would also be entitled to recover for any injury to the stock occasioned by its being detained, and for any care and expense that may have been expended on the goods occasioned by such detention. Appellee testified that the value of the goods shipped was $1850.17, and out of the whole shipment he had received from his agents nearly $1300.00 nett, and he claimed the difference between the value of the shipment and the amount he had received, and it would seem from the verdict of the jury, that they gave him within a few dollars of the amount he claimed. Appellant is only liable for the actual damages sustained by appellee resulting from the delay in delivering the goods. The damages awarded are greatly in excess of the proper amount even upon the basis of appellee.

The net proceeds of the goods received and the damages allowed amount to $1,837.00, which sum is within about fifteen dollars of what the goods would have brought if all had been received and paid for by the purchasers. But the evidence discloses that nearly a box full of the trees not disposed of was packed, marked, and shipped back to appellee by order of his agent, and what became of them is not shown. It also discloses that a portion of the claims for the trees, left with the magistrate for collection, were bad debts and could not be collected, and also that about $100.00 worth of claims not in suit are yet in the hands of the same magistrate. The total expense of delivering the goods and the commissions of the agents for selling were taken out of the gross proceeds of sale.

It devolved upon appellee to show, not only that he was damaged by reason of the failure of appellant to deliver the goods in time, but he should have shown the extent of those

damages, so that the jury could arrive at the amount for which appellant was liable. Such general testimony as that given by the agents of appellee that " the greater portion of the goods was disposed of to the men who had contracted for them, but in many cases we had to make a deduction to get them to take the trees," is not sufficient to cast the liability upon appellant without other testimony given to show that it was by reason of the delay in the delivery that the deductions were necessarily made, and the amount of such deductions. It is clear from the case as made by the record that the jury gave greater damages than appellee was entitled to, and for that reason the judgment must be reversed and the cause remanded.

Judgment reversed.